## Brumbaugh, Appellant, v. Raystown Water Power Company.

*Water companies—Dams—Eminent domain—Generation of electricity—Use of current.*

1. Under the Acts of May 16, 1889, P. L. 226, and July 2, 1895, P. L. 425, relating to the organization and powers of water companies, a water company organized under the provisions of the Act of 1889, has authority to erect a dam for the purpose of generating electric power.

2. The Act of April 13, 1905, P. L. 152, providing that no water company thereafter incorporated should exercise the right of eminent domain as respects the appropriation of streams, rivers or waters, nor the land covered thereby, does not forbid a water company from taking for the purposes of its reservoir land situated outside the limits of a stream.

3. In a suit in equity to restrain a water company from maintaining a dam in such a way that the waters of a stream were backed up on plaintiff's land, it appeared that the dam was constructed for use in generating electric power, that plaintiff's property was outside the bed of the stream, and that the water company had begun condemnation proceedings for the appropriation of such property. *Held,* the lower court did not err in dismissing the bill.

4. In such case it was immaterial where the electricity so generated was to be used.

Argued April 20, 1915. Reargued April 18, 1916. Appeal, No. 144, Jan. T., 1915, by plaintiff, from decree of C. P. Huntingdon Co., Sept. T., 1914, No. 208, in equity, dismissing bill in equity for an injunction, in case of Isaac Brumbaugh v. Raystown Water Power Company. Before Brown, C. J., Mestrezat, Potter, Stewart, Moschzisker, Frazer and Walling, JJ. Affirmed.

Bill in equity for an injunction.   Before WOODS, P. J.:
The opinion of the Supreme Court states the facts.

The court on final hearing dismissed the bill.   Plaintiff appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law of the trial judge and the decree of the court.

*W. H. Trude* and *H. H. Waite,* for appellant.—The defendant had no right to erect a dam in a public stream without legislative authority: Susquehanna Canal Co. v. Wright, 9 W. & S. 9.

The defendant did not possess the right of eminent domain, except as to highways, streets and lanes: Penna. R. R. Co. v. Canal Commissioners, 21 Pa. 9.

The water power company had no right to condemn private property outside of its district for the purpose of creating a storage plant to furnish water power to generate electricity within the district, to be vended and sold outside of the district for which it was chartered: Bly v. White Deer Mt. Water Co., 197 Pa. 80; Kellor v. Riverton Water Co., 161 Pa. 422; Independent Natural Gas Co. v. Butler Water Co., 210 Pa. 177; Commonwealth v. Erie & No. East R. R. Co., 27 Pa. 339; Phillips v. Dunkirk & Pittsburgh R. R. Co., 78 Pa. 177; Penna. R. R. Co.'s App., 93 Pa. 150.

*James S. Woods* and *W. B. Simpson,* with them *Thomas F. Bailey,* for appellee.—Whether or not plaintiff had the right to erect a dam is a matter for the State alone, which should and could only be decided in quo warranto proceedings.

Under the Act of April 13, 1905, P. L. 152, the defendant had the right of eminent domain, except as to the waters of a stream or the land covered thereby: Rider v. York Haven Water & Power Co., 242 Pa. 141.

OPINION BY MR. JUSTICE POTTER, May 23, 1916:

The plaintiff is the owner of a farm situated in Penn Township, Huntingdon County, upon the north side of the Raystown Branch of the Juniata river, which is a public stream.

The defendant company was incorporated March 30, 1906, under the Corporation Act of April 29, 1874, P. L. 73, and its supplements "for the purpose of the supply, storage and transportation of water and water power for commercial and manufacturing purposes, in the Township of Juniata, County of Huntingdon, and State of Pennsylvania." It erected a dam across the stream, several miles below plaintiff's land, and in connection with the dam erected machinery for the purpose of generating electricity. The dam caused the water to back up and overflow a portion of plaintiff's land. He then brought an action of trespass against defendant, and the latter then filed a petition for the appointment of viewers to assess the damages caused by the construction of the dam, and taking of plaintiff's land. In September, 1911, the directors of the corporation passed resolutions taking and appropriating plaintiff's land under its power of eminent domain. The court ordered a bond to be filed in the sum of $3,500. An appeal taken by plaintiff from this order was quashed by this court: (Raystown Water Power Co. v. Brumbaugh, 246 Pa. 225).

Plaintiff then filed the present bill, averring that defendant had no power under its charter, or under the law, to take his property by right of eminent domain, and praying that defendant be required to abate the nuisance caused by the overflowing of plaintiff's land, and be enjoined from continuing the alleged trespass. After hearing in the court below, the bill was dismissed, and plaintiff has appealed.

In the Act of May 16, 1889, P. L. 226, Section 1, amending the Act of April 29, 1874, P. L. 73, Section 2, provision is made for the incorporation of companies for the purpose of "the supply of water to the public, or the

supply, storage or transportation of water and water power for commercial and manufacturing purposes." In appellee's articles of incorporation the purposes of the proposed corporation are stated in the precise words of the provision quoted. In the amendment it is further provided, that, "Where such companies shall be incorporated for the supply of water to the public, or for storing and transportation or supply of water and water power for commercial and manufacturing purposes, they shall have power to provide, erect and maintain all works, and machinery necessary or proper for raising and introducing into the town, borough, city or district where they may be located a sufficient supply of pure water, or water and water power as aforesaid." The erection of a dam is clearly within the authority to erect necessary works. In addition to this, the Act of July 2, 1895, P. L. 425, Section 1, conferred on water power companies the right to develop electric power for commercial purposes by means of water power and authorized such companies "to make, erect and maintain the necessary buildings, machinery and apparatus for developing power and current." A dam would seem to be a necessary part of the provision for developing power and current, even if authority for the construction of dams by such companies had not already been conferred by the Acts of 1874 and 1889. In Jacobs v. Clearview Water Supply Co., 220 Pa. 388, it was expressly decided that corporations organized under the provisions of the Act of May 16, 1889, P. L. 226, for the purposes for which appellee in this case was incorporated, have the power of eminent domain. The charter, which was there in question, was, however, granted before the passage of the Act of April 13, 1905, P. L. 152, in which it is provided "that no water company, hereafter incorporated under any law, shall have powers or exercise the right of eminent domain, as respects the appropriation of the streams, rivers or waters of this Commonwealth, or any of them, nor the land covered thereby." It is suggested

that this act prevents the defendant company from exercising the right of eminent domain, which it would otherwise possess.    It should be noted that the defendant company is not, however, seeking to appropriate the waters of the stream in question, nor is it attempting to take any lands which, prior to the erection of its dam, were covered by the waters of the stream.    The land, which it seeks to take for the purpose of its reservoir, is situated outside the limits of the stream.    We see nothing in this act which affects the right of the defendant company to erect reservoirs or dams.    Apart from anything else, it would seem to have that right under the Act of March 23, 1803, 4 Sm. L. 20.    The legislature, by the Act of May 4, 1905, P. L. 385, created the Water Supply Commission of Pennsylvania, and, in the Act of May 28, 1907, P. L. 299, it was provided that no dam or other obstruction shall be placed in any public stream of this Commonwealth without the approval of the Water Supply Commission.    It appears that the defendant company presented its plans and specifications to the Water Supply Commission and received its approval.

After careful consideration of the Act of April 13, 1905, we are of the opinion that its provisions cannot properly be so construed as to prevent the defendant company from exercising its right of eminent domain, as to the land lying outside the bed of the stream, which is reasonably necessary to enable the company to discharge effectively its corporate functions.    There was no proof that appellee had used or intended to make use of the waters of this stream outside of its district.    This is admitted by appellant in his bill, where it is averred that the defendant company is manufacturing electricity and selling the same to persons outside the district.

In the Act of July 2, 1895, P. L. 425, Section 1, the right is given to water companies to distribute electric power and current "to any place or places."    There is no limitation in this respect, such as applied to the distribution of water under the Acts of 1874 and 1889, by

which the right of a company was confined to the district in which it was located. Nor is there any apparent reason why there should be such a limitation. The taking away of water from the locality might work serious harm. But the mere use of water power to generate electricity, by means of machinery located on or near the stream, takes no appreciable amount of water therefrom. The electricity, generated as a product of the water power, may be carried away, as any other product of the machinery may be, such as flour from a mill, or woolen goods from a factory. That electricity may be more easily transported, that it may be carried upon a wire, makes no difference.

Two of the assignments of error relate to the exclusion of offers to show damage to appellant's property, caused by the act of the defendant company in backing water upon it. This damage is not denied, and it is admitted that compensation must be made therefor as awarded by a jury of view. For that reason, the offers were properly excluded in the present case.

Another assignment of error complains of the exclusion of testimony as to an electric light company doing business in Huntingdon. Offer of proof, as to this, was entirely irrelevant, and it was properly excluded.

The assignments of error are all overruled, the decree of the court below is affirmed, and this appeal is dismissed at the cost of appellant.